UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATHANIEL WRIGHT,

            Plaintiff,

-vs-                                       **COMPLAINT**

NEW YORK STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION (DOCCS), ANTHONY
ANNUCCI, ACTING COMMISSIONER OF DOCCS, CHARLES
KELLY JR., SUPERINTENDENT MARCY CORRECTIONAL
FACILITY

            Defendants.

---

      Plaintiff, Nathaniel Wright, for his complaint against Defendants states and alleges as follows:

### PRELIMINARY STATEMENT

1. This action is brought by Nathaniel Wright against Defendants for violations of Title II, 42 U.S.C. § 12132, of the Americans with Disabilities Act, as amended (ADA), 42 U.S.C. § 12101 et seq, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794.

2. Plaintiff, Nathaniel Wright, has been incarcerated by the New York State Department of Corrections and Community Supervision (DOCCS) since October of 2012, and is currently at Marcy Correctional Facility (Marcy C.F.).

3. Defendants have refused to allow Mr. Wright use of his personal motorized wheelchair while incarcerated at Marcy C.F. This deprivation has prevented Mr. Wright from fully participating in Marcy C.F. programs and services.

4. Mr. Wright seeks declaratory and injunctive relief to compel Defendants to

allow him use of his personal motorized wheelchair within DOCCS facilities.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 USC § 1331.

6. Venue is proper in the Northern District of New York (NDNY) pursuant to 28 USC §1391(b), as Mr. Wright is currently housed in Oneida County, New York, Defendant Annucci directs and governs DOCCS from Albany County in the NDNY, Defendant Kelly directs and governs Marcy C.F. from Oneida County in the NDNY, and a substantial part of the events or omissions giving rise to the claim occurred in Oneida County, New York.

## PARTIES

7. Plaintiff Nathaniel Wright is fifty-one years old, a citizen of the United States, and a resident of the State of New York and an inmate at Marcy C.F.

8. Defendant DOCCS is the New York State agency responsible for operating correctional facilities within New York State.

9. Defendant Anthony Annucci is the acting Commissioner of DOCCS. He is responsible for the operation and administration of all facilities within the department, and the adoption of policies and procedures for the operation of such facilities. He is sued in his official capacity.

10. Defendant Charles Kelly Jr. is the Superintendent of Marcy CF. He is an employee of DOCCS, and responsible for the operation and administration of Marcy C.F. He is sued in his official capacity.

## FACTS

11. Mr. Wright was diagnosed with both cerebral palsy and scoliosis as a young child.

12. Approximately fifteen years ago his illnesses progressed to a point where a doctor determined it was medically necessary that he use a motorized wheelchair.

13. Mr. Wright is unable to do any physical activity for an extended period of time because of the muscle stiffness and lack of motor skills associated with his cerebral palsy.

14. Mr. Wright's feet do not face forward, which makes it very difficult for him to walk. He is only able to walk with the aid of a cane, and only for very short distances.

15. Mr. Wright is unable to rotate his left arm to effectively self propel a manual wheelchair. He can move himself in a manual wheelchair, but for only five to seven minutes at a time.

16. Upon becoming incarcerated in April 2012 Mr. Wright was allowed full use of his personal motorized wheelchair in general population at the Monroe County Jail.

17. Mr. Wright was transferred to DOCCS custody at Elmira Correctional Facility (Elmira C.F.) in October of 2012.

18. At Elmira C.F. DOCCS' medical staff determined that Mr. Wright has a "permanent limitation" and issued a medical restrictions permit for his use of the motorized wheelchair. This permit had no expiration date.

19. After one week at Elmira C.F. Mr. Wright was transferred to Marcy C.F. where he was allowed to continue using his personal motorized wheelchair in their medical unit.

20. Before transferring Mr. Wright to general population at Marcy C.F., DOCCS employees took his wheelchair and put it in storage.

21. In general population, Mr. Wright has been given a manual wheelchair and assigned an inmate "pusher" to move him throughout the facility.

22. Mr. Wright filed a grievance and requested "reasonable accommodations needed to get around the facility independently (i.e. my power wheelchair)."

23. His request was denied by Defendant Charles Kelly Jr. because "Departmental policy is to preclude the use of such items [motorized wheelchairs] by offenders."

24. On December 24, 2012, Mr. Wright's appeal of Superintendent Kelly's decision was received by the DOCCS Central Office Review Committee ("CORC").

25. Pursuant to 7 NYCRR § 701.5(d)(3)(ii): "The CORC shall review each appeal, render a decision on the grievance, and transmit its decision to the facility . . . within thirty (30) calendar days from the time the appeal is received."

26. As of this date Mr. Wright has not received a disposition from the CORC.

27. Under 7 NYCRR § 701.6(f)(2): "Time extensions may be requested at any level, but such extensions may be granted only with written consent of the grievant. Absent such extension, matters not decided within the time limits may be appealed to the next step."

28. The CORC has not sought an extension of the decision deadline and Mr. Wright has not consented to one.

29. As appealing to the CORC is the final step in the DOCCS administrative process, Mr. Wright has exhausted his administrative remedies in his effort to be able to use his motorized wheelchair while in DOCCS custody.

30. Having to use a manual chair and rely on a "pusher" does not allow Mr. Wright the full opportunity to participate in services, programs, and activities that are available to non-disabled inmates at Marcy C.F.

31. Services, programs, and activities available to inmates in general population at Marcy C.F. include but are not limited to: eating meals in the dining hall; receiving medical services;

participating in educational programs; purchasing necessities from the commissary; doing legal research at the law library; participating in educational programs, social events, and religious activities; and using the gym and yard time for recreation.

32. On several occasions, Mr. Wright's reliance on a "pusher" caused him to miss meal service.

33. Reliance on a "pusher" also caused Mr. Wright to miss scheduled gym and yard time several times.

34. The "pusher's" unavailability has also prevented Mr. Wright from using the law library on many occasions.

35. Mr. Wright has also frequently been unable to use the commissary because he could not use his own wheelchair.

36. On more than one occasion Mr. Wright has urinated or defecated on himself while his "pusher" slept because Mr. Wright could not self propel his manual wheelchair to the toilet quickly enough.

37. Mr. Wright's current job at the facility is "dorm porter." In order to perform his job he has to crawl around the dorm on his knees. He would like to work on the lawn and grounds crew, however he would be unable to do so without the use of his electric wheelchair due to the movement demands of that position.

38. On more than one occasion Mr. Wright has been unable to make it to morning sick call to receive his pain medication because his assigned "pusher" did not wake up to bring him.

39. Currently, Mr. Wright spends most of his time in his cell because he cannot independently avail himself of the facility's programs and services.

## COUNT I

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

40. Plaintiff repeats, realleges and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

41. Subtitle A of Title II of the ADA prohibits public entities from discriminating against persons with disabilities in their programs, services, and activities. 42 U.S.C. §§ 12131-12134. Regulations implementing subtitle A are codified at 28 C.F.R. pt. 35.

42. Title II's definition of "public entity" includes any state or local government or "any department, agency . . . or other instrumentality" of a state or local government. 42 U.S.C. § 12131(1)(A), (B).

43. DOCCS is a public entity within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104.

44. Commissioner Annucci and Superintendent Kelly are officials responsible for the operation of public entities covered by Title II.

45. Plaintiff has a disability within the meaning of 42 U.S.C. § 12102 (1) and 28 C.F.R. § 35.104. A disability is defined as having impairments that substantially limit one or more major life activities, including walking.

46. Mr. Wright has cerebral palsy and scoliosis which substantially limit his ability to walk.

47. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12132 and 28 C.F.R. § 35.104 because he is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . or the provision of auxillary aids and

services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 28 C.F.R. § 35.104.

48. With the assistance of his motorized wheelchair and /or Marcy C.F.'s waiver of its policy prohibiting the use of motorized wheelchairs, Mr. Wright would be fully able to participate in services and activities from which he has been barred as previously described in this complaint.

49. Defendants subject Plaintiff to discrimination by not allowing him to use his motorized wheelchair. This denial and discrimination violates 42 U.S.C. § 12132 which states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity."

50. As a result of Defendants' violations of the ADA, and its implementing regulations, Defendants are liable to Plaintiff for injunctive and declaratory relief pursuant to 42 U.S.C. § 12133.

## COUNT II

### VIOLATION OF § 504 OF THE REHABILITATION ACT

51. Plaintiff repeats, realleges and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

52. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504) provides, inter alia : "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of , or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ."

53. Plaintiff is a "individual with a disability" as defined by 29 U.S.C.

§ 705.20.

54. Plaintiff meets the essential eligibility requirements for receipt of services or participation in programs or activities provided by Defendants other than the fact he requires reasonable modifications to rules, policies, the removal of barriers, or the provision of auxiliary aids and services. *See.* 29 U.S.C. § 794.

55. DOCCS is a recipient of federal financial assistance, and Commissioner Annucci and Superintendent Kelly are responsible for the operation of public entities that receive federal assistance for the purposes of Section 504. 29 U.S.C. § 794(b).

56. Defendants discriminate against Plaintiff by not allowing him use of his personal motorized wheelchair.

57. As a result of Defendants' violations of Section 504, Defendants are liable to Plaintiff for declaratory and injunctive relief pursuant to 29 U.S.C. § 794a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

(1) Enter declaratory judgment finding Defendants' denial of Plaintiff's request to use his motorized wheelchair at Marcy C.F. violates the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

(2) Issue appropriate injunctions compelling Defendants to allow Plaintiff use of his personal motorized wheelchair;

(3) Issue appropriate injunctions compelling Defendants to enact policies and/or directives ensuring qualified inmates with disabilities are allowed to use medically indicated motorized wheelchairs while in Defendant's custody;

(4) Issue appropriate injunctions to prevent future deprivation of Plaintiff's rights;

(5) Award Plaintiff's costs, including reasonable attorneys' fees under 29 U.S.C. § 794a(b); 42 U.S.C. § § 12133, 12205; and other relevant provisions of law; and

(6) Allow such other and further relief as the Court may deem just, proper and equitable.

Dated:  Syracuse, New York
May 15, 2013.

/s/ Samuel C. Young
Samuel C. Young, (508916)
Joshua T. Cotter*
Legal Services of Central New York, Inc.
Attorneys for Plaintiff
472 S. Salina St., Suite 300
Syracuse, New York 13202
Tel No: (315) 703-6579
Fax No: (315) 475-2706
Samyoung@lscny.org
Jcotter@lscny.org

* Admission to the Northern District of New York Pending